UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MAHBOBA AZIZI, | ) | No.  CV 08-10-PLA |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendants. | ) | |

I.

PROCEEDINGS

Plaintiff filed this action on January 8, 2008, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 9, 2008, and March 30, 2009.  The parties filed a Joint Stipulation on September 10, 2008, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on May 10, 1969. [Administrative Record ("AR") at 68, 82.] She has a high school education [AR at 80, 366, 550], and has past relevant work experience as a retail cashier/stocker/storekeeper, machine packager, and grocery bagger. [AR at 76-77, 85-93, 369-75, 398, 552-55.]

On December 15, 2003, plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since March 15, 1999, due to back, leg and neck pain. [AR at 68-70, 75-76, 355-58.] After her applications were denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 41-47, 359.] A hearing was held on May 3, 2005, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 362-403.] A vocational expert also testified. [AR at 397-403.] On June 22, 2005, the ALJ determined that plaintiff was not disabled. [AR at 16-30.] Plaintiff requested review of the hearing decision. [AR at 13-14.] The Appeals Council denied plaintiff's request for review on February 2, 2006. [AR at 6-9.]

Plaintiff then filed an action in District Court, in Case No. CV 06-1897-PLA, challenging the Commissioner's decision. On January 16, 2007, the Court remanded the matter with instructions to reconsider the opinion of treating physician Dr. San San Wai and the third party statement. [AR at 446-53.] On February 27, 2007, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2007 Order. [AR at 456-58.] On August 20, 2007, a second hearing was held, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 547-605.] A medical expert and a vocational expert also testified. [AR at 571-602.] On September 17, 2007, the ALJ determined that plaintiff was not disabled. [AR at 421-33.] Plaintiff requested review of the hearing decision. [AR at 407-09.] When the Appeals Council denied plaintiff's request for review on October 29, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 404-06.] This action followed.

/

/

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[1]  [AR at 426.]  At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "significant lower lumbar spondylosis and facet enlargement at L5-S1 and L4-5 level with bilateral radiating pain (right more than left) with some degree of radiculopathy, an old C6 compression fracture, and elbow

---

[1]   The ALJ also determined that plaintiff "met the insured status requirements of the Social Security Act through December 31, 2003."  [AR at 426.]

4

epicondylitis (citations omitted)."[2] [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [AR at 427.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to "lift and/or carry 20 pounds occasionally and 10 pounds frequently and stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday," with the option to stand for five minutes after every 30 minutes of sitting; "perform occasional postural activities," but can never climb ladders, ropes, scaffolds, or work at heights; and occasionally push and pull with the left lower extremity, but can never push and pull with the right lower extremity.  [AR at 427.]  At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work.  [AR at 432.]  At step five, the ALJ found, based on the vocational expert's testimony, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  [AR at 432.]  Accordingly, the ALJ determined that plaintiff is not disabled.  [AR at 433.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to articulate specific and legitimate reasons for rejecting the opinion of her treating physician, Dr. Wai.  Joint Stipulation ("Joint Stip.") at 4.  Specifically, plaintiff asserts that the ALJ improperly discounted Dr. Wai's finding that plaintiff was restricted to sitting for no longer than two hours.  Joint Stip. at 4-7.  As set forth below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; Lester,

---

[2]    The ALJ also concluded that plaintiff's "dysthymic reaction is non-severe."  [AR at 427.]

[3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability.  Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).  Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record.  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[4] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

In the decision, the ALJ discounted the opinion of Dr. Wai in favor of the testimony of nonexamining medical expert Dr. Joseph Jensen.  [AR at 431.]  The ALJ's adoption of Dr. Jensen's opinion was based on an evaluation of several factors, including specialization of the physician, the supportability of the opinion, and the consistency of the opinion with the record as a whole. [Id.]  Further, the ALJ gave "less weight" to the opinion of Dr. Wai because it was controverted by the opinion of Dr. Jensen, as well as the opinions of the consultative examiners and nonexamining State Agency physician.  [AR at 431.]  As discussed below, the ALJ properly considered the opinion of Dr. Wai, namely Dr. Wai's sitting restriction of no longer than two hours.

---

[4]    Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    The ALJ's disregard of Dr. Wai's opinion in favor of the opinion of Dr. Jensen is legally

2    sufficient.  In evaluating medical opinions,[5] the ALJ considers the supportability of the opinion in

3    the evidence, the consistency of the opinion with the record as a whole, including other medical

4    opinions, the specialization of the physician providing the opinion, and other factors such as the

5    degree of understanding the physician has of the Social Security Administration's "disability

6    programs and their evidentiary requirements" and the degree of the physician's familiarity with

7    other information in the case record.  See 20 C.F.R. §§ 404.1527(d)(3)-(6), (f)(2)(ii),

8    416.927(d)(3)-(6), (f)(2)(ii); see, e.g., Wimberly v. Astrue, 2008 WL 4381617, at *5 (C.D. Cal.

9    Sept. 25, 2008) ("[w]hen the ALJ considers the findings of a State Agency medical consultant, the

10   ALJ evaluates the findings using factors such as medical specialty and expertise in social security

11   rules, supporting evidence in the case record, supporting explanations provided by the physician,

12   and any other factors relevant to the weighing of the opinions.") (citation omitted).  State Agency

13   physicians are considered "highly qualified physicians who are also experts in Social Security

14   disability evaluation."  See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); see also SSR 96-6p.

15   "In appropriate circumstances, opinions from State agency medical and psychological consultants

16   and other program physicians and psychologists may be entitled to greater weight than the

17   opinions of treating or examining sources."  SSR 96-6p.

18       Here, the ALJ gave "greater weight" to the opinion of Dr. Jensen in discounting the opinion

19   of Dr. Wai.[6]  The ALJ found that Dr. Jensen's "expertise as an orthopedic specialist is especially

20

21

22       [5]   "Medical opinions are statements from physicians and psychologists or other acceptable

23   medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s)
     including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. §§ 404.1527(a)(2),

24   416.927(a)(2).

25       [6]   In assigning "greater weight" to the opinion of Dr. Jensen, the ALJ in essence rejected

26   the opinion of Dr. Wai based on the factors relevant to the evaluation of medical opinions.  See
     Magallanes, 881 F.2d at 755 ("[m]agic words" from the ALJ specifically rejecting a physician's

27   opinion are not required, when inferences "are there to be drawn" from the ALJ's decision).  Thus,
     the ALJ needed to provide specific and legitimate reasons for rejecting the opinion of Dr. Wai.  As

28   discussed herein, he did so.

1    germane in this case." [AR at 431.]  Generally, more weight is given to "the opinion of a specialist

2    about medical issues related to his or her area of specialty than to the opinion of a source who is

3    not a specialist."  See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).  The record reveals that Dr.

4    Jensen was an orthopedic surgeon prior to his retirement and retainment as a medical expert in

5    this case, whereas Dr. Wai is a doctor of internal medicine.  [AR at 261, 461.]  Given that plaintiff's

6    medical issues pertain mostly to the musculoskeletal system, the ALJ's reliance on Dr. Jensen's

7    specialization was proper.  The ALJ also noted that Dr. Jensen considered the "most updated

8    evidence of record."  [AR at 431.]  Indeed, Dr. Jensen's testimony was based on a review of the

9    record as a whole, including the opinions of the treating and examining sources.  [AR at 571, 578-

10   79.]  See SSR 96-6p (the opinion of a State Agency physician may be entitled to greater weight

11   than the opinion of a treating source if the State Agency physician's opinion "is based on a review

12   of a complete case record that includes a medical report from a specialist in the [claimant's]

13   particular impairment which provides more detailed and comprehensive information than what was

14   available to the [claimant's] treating source").  The ALJ further noted that Dr. Jensen explained the

15   nature of plaintiff's impairments, and that his testimony was detailed and well-reasoned.[7]  [AR at

16   431.]  See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("the weight afforded to the opinions of

17

18        [7]    Based on his consideration of all of the pertinent evidence, Dr. Jensen testified at the
19   August 20, 2007, hearing that plaintiff "has a significant degree of lower lumbar spondylosis [and]
     facet enlargement at L5/S1 and L4/L5 level with some bilateral . . . radiating pain [(right more than
20   left)]."  [AR at 571.]  He also testified that plaintiff has some degree of radiculopathy, an old C6
     compression fracture, and some elbow epicondylitis.  [AR at 571-72.]  Dr. Jensen found that
21   plaintiff has the RFC to lift and/or carry 20 pounds on an occasional basis and 10 pounds on a
     frequent basis, stand and/or walk for a combined total of two hours in an eight-hour day, and sit
22   for six hours in an eight-hour day with the option to stand for five minutes after every 30 minutes
     of sitting.  [AR at 573, 579.]  He further found that plaintiff can occasionally balance, bend, stoop,
23   kneel, or crawl, but cannot climb ladders, ropes, or scaffolding, and cannot work at hazardous
     heights; can occasionally use the upper extremities for gross and fine manipulation; and can
24   occasionally perform pedal operation with her left foot, but cannot use pedals with her right foot.
     [AR at 573.]  Dr. Jensen testified that the sitting limitation imposed by Dr. Wai was not necessary.
25   [AR at 576.]  He stated that he did not see, based on his experience and a review of the objective
     evidence, "a need for recumbency or inability to sit for two hours."  [AR at 580.]  On cross-
26   examination, Dr. Jensen testified that the sitting limitation found by Dr. Wai "did not appear
     appropriate given the overall picture," i.e., the status of the spine, bond imaging studies, or range
27   of motion, and other findings.  [AR at 593.]

28

1    nonexamining physicians depends on "the degree to which they provide supporting explanations

2    for their opinions"). As discussed below, Dr. Jensen's testimony is supported by the evidence in

3    the record, including the consultative examiners' clinical findings, e.g., no paraspinal spasm and

4    intact sensation, as well as the x-ray tests and MRI scans. [AR at 188-90, 285, 482, 484, 497-98,

5    578.] Additionally, the ALJ found Dr. Jensen's opinion consistent with the record as a whole. See

6    20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (the more consistent an opinion is with the record as

7    a whole, the more weight it will be given); see, e.g., Knight v. Chater, 55 F.3d 309, 314 (7th Cir.

8    1995) ("[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with

9    other evidence.") (citation omitted). The sitting restriction imposed on plaintiff by Dr. Wai not only

10   conflicted with the opinion of Dr. Jensen, but it also conflicted with the opinion of four consultative

11   examining physicians and one nonexamining State Agency physician. See discussion, infra.

12   Thus, the ALJ did not err in affording "greater weight to the assessment of Dr. Jensen as the most

13   comprehensive and credible assessment of [plaintiff's] functional capacity." [AR at 431.]

14        Next, the ALJ's finding that the opinion of Dr. Wai was entitled to "less weight," in light of Dr.

15   Jensen's testimony that "there was no objective evidence that warranted the imposition of

16   restricting [plaintiff] to sitting for two hours in an eight-hour workday," is supported by the record.

17   [AR at 431.] The proper weight that an ALJ should give to a treating physician's opinion depends

18   on whether sufficient data supports the opinion and whether the opinion comports with other

19   evidence in the record. See 20 C.F.R. §§ 404.1527, 416.927. The opinion of the treating physician

20   is not necessarily conclusive as to either the physical condition or the ultimate issue of disability.

21   See Magallanes, 881 F.2d at 751. The ALJ is not required to accept a medical opinion that is

22   conclusory and inadequately supported by medical findings. See Johnson v. Shalala, 60 F.3d 1428,

23   1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory

24   and unsubstantiated by relevant medical documentation"); see also Matney v. Sullivan, 981 F.2d

25   1016, 1019 (9th Cir. 1992) (ALJ may discount the conclusory opinion of an examining or treating

26   physician if the opinion is unsupported by clinical findings); Batson v. Commissioner of the Social

27   Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians'

28   opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective

9

1   medical findings).  At the hearing on August 20, 2007, Dr. Jensen concluded, based on his review

2   of the record and the objective medical findings, that Dr. Wai's sitting restriction of no longer than

3   two hours was unnecessary.[8]  [AR at 576, 579-80.]  On cross examination, Dr. Jensen noted Dr.

4   Wai's finding in her initial treatment note of July 1, 2003, that plaintiff's "toe walking" was weak, but

5   testified that such a finding must be supported by strength testing of the required specificity to be

6   suggestive of motor loss.  [AR at 261, 590-91.]  Dr. Jensen indicated that ratings of 3 out of 4, or 4

7   out of 5, were suggestive of motor loss of the specificity required.  [AR at 591.]  However, Dr. Wai's

8   treatment notes did not reflect any such motor ratings.[9]  [AR at 194-98, 256-61.]  In fact, Dr. Wai

9   rated plaintiff's strength as normal, i.e., 5 out of 5, in the musculoskeletal form dated January 28,

10  2004.  [AR at 194.]  Despite Dr. Wai's diagnosis of radiculopathy in the lumbar and cervical spines,

11  the only other findings noted in the musculoskeletal form were paravertebral muscle spasms and

12  tenderness.  [AR at 194.]  Because Dr. Wai did not elaborate on, or otherwise explain, how plaintiff's

13  impairments resulted in the functional limitations set forth in the musculoskeletal form, the ALJ did

14  not err in giving less evidentiary weight to the opinion of Dr. Wai.[10]

15

16  [8]    Plaintiff contends that the clinical and laboratory findings do not support Dr. Jensen's
17  testimony. Joint Stip. at 6-7.  This contention is not well-supported as plaintiff did not consider the
    testimony of Dr. Jensen in its entirety, instead isolating specific portions of the testimony.
18  Specifically, plaintiff isolated Dr. Jensen's initial testimony that a sitting restriction of no longer than
    two hours was not supported by the physical findings, such as range of motion and straight leg
19  raising, as well as Dr. Jensen's subsequent acknowledgment that the records show some
20  limitations in straight leg raising and range of motion.  Id.  [AR at 581.]  Despite Dr. Jensen's
    subsequent acknowledgment, however, he reiterated that the findings as a whole did not warrant
21  the sitting restriction imposed by Dr. Wai.  [AR at 593-94.]

22  [9]    It is noted that Dr. Ruzanna Alexanian rated plaintiff's motor strength as 4 out of 5 in
23  1999.  [AR at 166-67.]  However, on May 21, 2001, Dr. Alexanian rated plaintiff's motor strength
    as 5 out of 5 on the left side, and 4 out of 5 on the right side.  [AR at 162.]  While some of Dr.
24  Alexanian's ratings are suggestive of motor loss, there is no indication in her subsequent treatment
    notes that plaintiff suffered from decreased motor strength.  [AR at 160-61.]  In addition, Dr.
25  Alexanian found, in the Medical Provider Evaluation form dated April 25, 2000, that plaintiff was
    temporarily disabled for eight months, but her subsequent treatment notes do not reflect an
26  extension of the temporary disability period.  [AR at 160-63.]  As such, Dr. Alexanian's treatment
    notes as a whole do not lend support to Dr. Wai's sitting restriction.

27

28  [10]   Given that the ALJ properly relied on the lack of objective evidence to discount Dr. Wai's
    sitting restriction, the ALJ's disregard of Dr. Wai's opinion that plaintiff has been disabled since

1    Moreover, the ALJ's conclusion that Dr. Wai's sitting restriction is not persuasive based on

2    the record as a whole is supported by substantial evidence.  [AR at 431.]  An examining physician's

3    opinion based on independent clinical findings that differ from the findings of a treating physician

4    may constitute substantial evidence.  See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)

5    ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another

6    physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on

7    objective medical tests that the treating physician has not herself considered." (citation omitted)).

8    Here, the ALJ did not rely solely on the testimony of Dr. Jensen to discount the opinion of Dr. Wai;

9    he also considered the opinions of consultative examiners Dr. Behnam Farahdel, Dr. Rajeswari

10   Kumar, Dr. Robert A. Moore, and Dr. William C. Boeck, Jr., as well as the opinion of nonexamining

11   State Agency medical consultant Dr. L. Chaing-Chien.  [AR at 431.]  The ALJ found that "[e]xcept

12   for the opinions of Dr. Wai and Dr. Ro,[11] Dr. Boeck, Dr. Chaing-Chien, Dr. Moore, Dr. Kumar, and

13   Dr. Farahdel all agreed that [plaintiff] had at least the functional capability that Dr. Jensen assessed

14   . . .".  [AR at 431.]  Although Dr. Chaing-Chien is a nonexamining State Agency physician,[12] Dr.

15

16   July 1, 2003, and is unable to work was not improper.  [AR at 195.]  See Rodriguez, 876 F.2d at

17   761-62 (although the treating physician's opinion is entitled to great deference, it is not necessarily
     conclusive as to the question of disability); see also Johnson, 60 F.3d at 1432 (inadequate clinical

18   findings provide specific and legitimate basis for ALJ to reject treating physician's opinion).

19   11   The ALJ gave "less weight" to the opinion of treating physician Dr. Kyoo Ro for the

20   reasons stated in the previous decision of June 22, 2005.  [AR at 431.]  Given the Court's
     conclusion in the remand Order of January 16, 2007, that the ALJ provided specific and legitimate

21   reasons, supported by substantial evidence in the record, to give less weight to the residual
     functional capacity set forth by Dr. Ro (see Memorandum Opinion and Order in Case No. CV 06-

22   1897-PLA, issued on January 16, 2007, at p. 6, n.5 [AR at 451]), the Court herein does not
     address the opinion of Dr. Ro.

23   12   Dr. Chaing-Chien found that plaintiff had the following exertional limitations: she can lift

24   and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal
     breaks) for a total of at least 2 hours in an eight-hour workday, sit (with normal breaks) for a total

25   of about 6 hours in an eight-hour workday, but must alternate sitting and standing every 2 hours to
     relieve pain or discomfort, and she is unlimited in her ability to push and/or pull (including operation

26   of hand and/or foot controls) aside from the lift and/or carry limitations.  [AR at 205.]  Dr. Chaing-

27   Chien's findings are consistent with the findings of the consultative physicians in the record.  Thus,
     the ALJ properly considered the opinion of Dr. Chaing-Chien.  As discussed below, the opinion of

28   a nonexamining, nontreating physician need not be discounted when it "is not contradicted by all

1  Boeck, Dr. Moore, Dr. Farahdel and Dr. Kumar are consultative examining physicians whose

2  opinions were based on independent clinical findings that differed from the findings of Dr. Wai.

3      Dr. Boeck performed a complete orthopedic consultation of plaintiff on January 27, 2004.

4  [AR at 187-91.]  During his physical examination of plaintiff, Dr. Boeck noted, among other things,

5  that plaintiff has "even, steady and heel-to-toe" walking, free ranges of motion in the cervical spine,

6  as well as normal muscle strength and intact sensation.  [AR at 188-89.]  He stated that "[t]he

7  positive findings noted objectively in examination of [plaintiff] are the limited motions in the lower

8  back, the lumbar scar, and the complaint of pain in the low back at the full excursion of hip flexion

9  on each side." [AR at 190-91.]  Based on the objective findings, Dr. Boeck concluded that plaintiff

10 is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk up to 2

11 hours in an eight-hour workday, and sit up to 6 hours in an eight-hour workday.  [AR at 191.]  On

12 December 13, 2004, Dr. Moore completed a neurological evaluation of plaintiff.  [AR at 282-86.]

13 He reviewed the medical records, and performed physical and neurological examinations of

14 plaintiff.  [AR at 283-85.]  He noted that plaintiff "exhibits a somewhat non-physiological pattern

15 of a sensory loss," but there are no motor or reflex abnormalities.  [AR at 285.]  Dr. Moore

16 diagnosed plaintiff with status post lumbar hemilaminectomy and depression with probable

17 psychological factors affecting a physical condition.  [AR at 285.]  He found that plaintiff can stand

18 and walk for two to four hours in thirty minute intervals in an eight-hour day, sit with appropriate

19 breaks, occasionally bend and stoop, operate foot controls, but cannot climb, balance or work at

20 heights.  [AR at 285, 287-88.]  On May 13, 2007, Dr. Farahdel performed a neurological evaluation

21 of plaintiff, which included a review of the medical records, and physical and neurological

22 examinations. [AR at 495, 497-98.]  Dr. Farahdel noted, inter alia, that plaintiff has "no tenderness

23 to palpation or muscle spasm" and normal range of motion of the cervical spine; tenderness to

24 touch in the lumbar spine, but no paraspinal muscle spasm and normal range of motion of the

25 thoracolumber spine; normal motor strength and tone; and no atrophy.  [AR at 497-98.]  He

26 diagnosed plaintiff with lumbar radiculopathy status post L5-S1 discectomy and cervical

27

28 _other evidence in the record_."  See Magallanes, 881 F.2d at 752 (emphasis in original).

1   radiculopathy.  [AR at 498.]  Dr. Farahdel found that plaintiff is capable of carrying and lifting 20

2   pounds occasionally and 10 pounds frequently, standing and walking for at least six hours, and

3   has no limitations with respect to sitting, pushing, pulling, hearing, seeing, or use of the hands.

4   [Id.]  Dr. Kumar performed a complete orthopedic evaluation of plaintiff on May 15, 2007, which

5   consisted of a review of the medical records, physical examination, extremity examination/range

6   of motion, and neurological examination.  [AR at 479-85.]  He noted that plaintiff has tenderness

7   of the cervical and lumbar paraspinal region, but no paraspinal muscle spasm.  [AR at 482.]  He

8   further noted that plaintiff's cervical and lumbar spine range of motion is restricted, but stated that

9   she has inconsistent straight leg raising, positive axial compression test and non-dermatomal

10  sensory changes in the left lower extremity, which may suggest symptom magnification.  [AR at

11  482-84.]  Dr. Kumar diagnosed plaintiff with chronic neck pain, probable cervical spondylosis,

12  status post hemilaminectomy and discectomy at L5-S1 level with chronic lower back pain,

13  adhesive capsulitis of the left shoulder, and left elbow strain.  [AR at 484.]  Based on his

14  examination of plaintiff, Dr. Kumar determined that plaintiff's "functional limitation is due to the

15  limited range of motion of cervical spine, lumbar spine, previous lower back surgery and limited

16  range of motion of the left shoulder."  [AR at 485.]  He found, among other things, that plaintiff can

17  lift and carry 25 pounds occasionally and 15 pounds frequently, stand and walk for six hours

18  without an assistive device with routine breaks, and occasionally bend and stoop.[13]  [AR at 485.]

19       Neither the findings nor the conclusions of the consultative examiners are the same as the

20  findings and conclusions of Dr. Wai.  Contrary to the findings of Dr. Wai,[14] none of the consultative

21  _____

22  [13]  Dr. Kumar noted in the "Medical Source Statement of Ability to do Work-Related
    Activities (Physical)" that plaintiff was able to sit, stand and walk for 1 hour at a time without

23  interruption for a total of 8 hours in an eight-hour workday.  [AR at 488.]

24  [14]  On July 1, 2003, Dr. Wai noted that plaintiff's subjective symptoms indicated that she
    had chronic low back pain with less pain over the left lower extremity and that she could sit for 2-3

25  hours.  [AR at 261.]  Dr. Wai further noted that plaintiff's "toe walking" was weak with decreased
    sensory perception of the right lower extremity, and increased lower left extremity pain when

26  squatting.  [AR at 261.]  She assessed plaintiff with low back pain with a history of disc surgery
    and radiculopathy.  [Id.]  On September 9, 2003, Dr. Wai assessed plaintiff with lumbar

27  radiculopathy.  [AR at 260.]  On December 3, 2003, Dr. Wai determined that plaintiff was unable

28  to work.  [AR at 195.]  On January 28, 2004, Dr. Wai noted in the musculoskeletal form that

1   examiners found that plaintiff had paravertebral muscle spasm, weak "toe walking," or decreased

2   sensory perception of the right lower extremity.  [AR at 194, 261.]  Rather, the consultative

3   examiners found that plaintiff had "even, steady and heel-to-toe" walking, no cervical or lumbar

4   paraspinal muscle spasms, intact sensation, and reduced sensation in the entire left lower extremity

5   in a nondermatomal distribution suggesting symptom magnification.  [AR at 188-90, 285, 482, 484,

6   497-98.] When presented with conflicting medical opinions, it is solely within the province of the ALJ

7   to resolve the conflict.  See Andrews, 53 F.3d at 1041 ("[w]here the opinion of a claimant's treating

8   physician is contradicted, and the opinion of a nontreating source is based on independent clinical

9   findings that differ from those of the treating physician, the opinion of the nontreating source may

10  itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."); see

11  also Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (where medical reports are

12  inconclusive, "'questions of credibility and resolution of conflicts in the testimony are functions solely

13  of the Secretary'") (quoting Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971)); Magallanes,

14  881 F.2d at 753 ("[t]he analysis and opinion of an expert selected by the ALJ may be helpful to the

15  ALJ's adjudication, and [the Court] should not impose 'burdensome procedural requirements that

16  facilitate . . . second-guessing [the ALJ's resolution of conflicting medical testimony].'") (citing Allen

17  v. Heckler, 749 F.2d 577, 580 (9th Cir. 1984)).   Given that the opinions of the consultative

18  examiners were based on independent clinical findings that differ from those of Dr. Wai, and thus

19  constitute substantial evidence, it was solely within the province of the ALJ to resolve the conflict in

20  the medical opinions regarding plaintiff's functional limitations.

21        Furthermore, the ALJ's reliance on Dr. Jensen's opinion based on its consistency with the

22  record as a whole was proper.  The opinion of a nonexamining physician may serve as substantial

23  evidence when it is consistent with other independent evidence in the record.  See Lester, 81 F.3d

24  at 830-31; see also Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be

25  ─────────────

26  plaintiff had instability of the lumbar and cervical spines, paravertebral muscle spasms and
    tenderness, and normal strength.  [AR at 194.]  She diagnosed plaintiff with lumbar and cervical

27  radiculopathy, and found that plaintiff could not stand, sit, or walk for longer than two hours.  [AR
    at 193-94.]  On April 4, 2004, Dr. Wai assessed plaintiff with chronic lumbar disc disease and

28  related pain.  [AR at 257.]

discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); Magallanes, 881 F.2d at 751-55 ("the ALJ did not rely on [the nonexamining physician's] testimony *alone* to reject the opinions of [the claimant's] treating physicians . . . .") (emphasis in original); but see Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (the opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies that rejection of a treating physician).  Dr. Jensen's testimony, that there is no objective evidence to support Dr. Wai's sitting restriction, is consistent with the opinions of the consultative and State Agency physicians and the record as a whole.  Given that Dr. Jensen's opinion is supported by other evidence in the record, his opinion constitutes substantial evidence.

The ALJ summarized the facts and conflicting evidence in a detailed and thorough manner, stating his interpretation and making findings.  Thus, his conclusion is entitled to deference.  The ALJ provided legally sufficient reasons, based on substantial evidence in the record, for discounting the opinion of Dr. Wai.  See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings") (citing Magallanes, 881 F.2d at 751).  Accordingly, remand is not warranted.

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

15

1       **This Memorandum Opinion and Order is not intended for publication, nor is it**

2 **intended to be included or submitted to any online service such as Westlaw or Lexis.**

3

4

5   DATED: April 15, 2009

6                                      PAUL L. ABRAMS

                            UNITED STATES MAGISTRATE JUDGE